JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff __Berks__
*(EXCEPT IN U.S. PLAINTIFF CASES)*
20 Hess Lane, Longswamp, Berks County, PA

County of Residence of First Listed Defendant __Berks__
*(IN U.S. PLAINTIFF CASES ONLY)*
One Tower Square, PB06A, Hartford, CT 06183
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James C. Haggerty, Haggerty, Goldberg, Schleifer & Kupersmith, 1835 Market St. – 27th Floor, Philadelphia, PA 19103, (ph) 267.350.660

Scott B. Cooper, Schmidt Kramer PC, 209 State St., Harrisburg, PA 17101. (ph) 717.232.6300

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | X 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| X 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane — ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability — ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander — Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability — Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine — ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability — Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle — **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability — ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury — ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice — ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | — ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights — **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting — ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment — ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations — ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment — ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other — **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education — ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | — ☐ 555 Prison Condition | | | |
| | — ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| X 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* 28 U.S.C. 1332

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

X CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE _____ DOCKET NUMBER _____

DATE
10/30/2020

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG JUDGE

Print          Save As...          Reset

JS 44 Reverse (Rev. 06/17)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.  Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

FLORENCE GOOD AS EXECUTOR TO THE    :
ESTATE OF BARRY D. GOOD, DECEASED    : CASE NO: _____
AND NIKO CEPEDA, INDIVIDUALLY AND    :
ON BEHALF OF A CLASS OF SIMILARLY    :
SITUATED PERSONS,    : CLASS ACTION
    :
            Plaintiffs,    :
    : JURY TRIAL DEMANDED
         vs.    :
    :
TRAVELERS PROPERTY CASUALTY    :
COMPANY OF AMERICA,    :
    :
            Defendant.    :
    :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     (     )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     (
     )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred
     to as complex and that need special or intense management by

the court. (See reverse side of this form for a detailed explanation of special management cases.)

( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.

(X)

| 10/30/2020 | Scott B. Cooper | |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for Plaintiffs** |

| 717-232-6300 | 717-232-6467 | scooper@schmidtkramer.com |
|---|---|---|
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 – Assignment to a Management Track

(a)  The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)  In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)  The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)  Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)  Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in

1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 20 Hess Lane, Longswamp Township, Berks County, Pennsylvania

Address of Defendant: One Tower Square, PBO6A, Hartford, Connecticut 06183

Place of Accident, Incident or Transaction: Berks County, Pennsylvania

---

*RELATED CASE, IF ANY:*

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____     _____     _____
                          *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*

☒ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Scott B. Cooper , counsel of record *or pro se plaintiff*, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 10/30/2020     _____     70242
                     *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| FLORENCE GOOD AS EXECUTOR TO THE ESTATE OF BARRY D. GOOD, DECEASED AND NIKO CEPEDA, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS, | :  CASE NO: _____ : :  CLASS ACTION :  JURY TRIAL DEMANDED |
| Plaintiffs, | : : |
| vs. | : : |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | : : : |
| Defendant. | : : |

---

## CLASS ACTION COMPLAINT

### Parties

1.    Plaintiff, Florence Good, is an adult individual citizen and resident of the Commonwealth of Pennsylvania, residing at 20 Hess Lane, Longswamp Township, Berks County, Pennsylvania.

2.    Plaintiff, Florence Good, brings this action in her capacity as Executor of the Estate of Barry D. Good, Deceased, with Letters Testamentary having been granted to her by the Register of Wills of Berks County on May 11, 2012.

3.    Decedent, Barry D. Good, and Plaintiff, Florence Good, were, and remained, husband and wife until his death.

4.    Plaintiff, Niko Cepeda, is an adult individual citizen and resident of the Commonwealth of Pennsylvania, residing at 147 Shearers Road, Sinking Springs, Berks County, Pennsylvania.

1

5.      At all times material hereto, Niko Cepeda was residing at his father Mario Cepeda's home located at 147 Shearers Road, Sinking Springs, Berks County, Pennsylvania.

6.      Niko Cepeda is the son of Mario Cepeda, which makes him a resident relative at all material times hereto.

7.      Defendant, Travelers Property Casualty Company of America (Travelers), is a corporation organized and existing in the State of Connecticut, with its principal place of business located at One Tower Square, PB06A, Hartford, Connecticut. Travelers is duly authorized to and regularly and routinely conducts business in the Commonwealth of Pennsylvania.

8.      The present action seeks declaratory relief, contractual underinsured motorist benefits, and injunctive relief on behalf of the individual Plaintiffs, Florence Good and Niko Cepeda, and on behalf of a class of similarly situated persons, under Insurance Policies issued by Defendant, Travelers, in the Commonwealth of Pennsylvania.

**Jurisdiction and Venue**

9.      Plaintiffs, Niko Cepeda and Florence Good, are citizens of Pennsylvania and domiciled in the Commonwealth of Pennsylvania.

10.      Defendant, Travelers, is incorporated in Connecticut with its principal place of business in Connecticut.

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs and at least one Class member is a citizen of a state different from Defendant. Defendant transacts business in Pennsylvania and derives substantial income from the sale of insurance in Pennsylvania.

2

12.     Venue lies in the Eastern District of Pennsylvania under 28 U.S.C. § 1391 as the underinsurance agreements for Barry Good and Mario Cepeda took place in the Eastern District of Pennsylvania.

### Florence Good Claim

13.     At all times material hereto, there existed, in full force and effect, a Pennsylvania Automobile Insurance Policy for Florence Good's Decedent, Barry Good on his 2009 Kawasaki Volcan Motorcycle through Progressive ("Progressive Policy").

14.     The Progressive Policy had underinsurance limits of $100,000.00.

15.     Progressive tendered the policy limit of $100,000.00 to Florence Good for the April 4, 2012 crash.

16.     At all times material hereto, there existed, in full force and effect, a Pennsylvania Automobile Insurance Policy (No. 975455235 101 1) (" Good Travelers Policy") issued by Defendant, Travelers, to Barry Good and Florence Good, providing coverage in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. ("MVFRL" or "Financial Responsibility Law").  A true and correct copy of the Policy is attached hereto and marked as Exhibit A.

17.     The Good Travelers Policy issued provides $200,000.00 in stacked underinsured motorist coverage.

18.     Decedent, Barry Good's, 2009 Kawasaki Volcan Motorcycle was not insured by the Good Travelers Policy.

19.     At all times material hereto, the Good Travelers Policy and the Progressive Policy were insured under the same household by Florence Good and Barry Good.

### Crash

3

20.    On April 4, 2012, Decedent, Barry Good, was operating his 2009 Kawasaki Volcan Motorcycle eastbound on Kutztown Road, Upper Hanover Township, Montgomery County, Pennsylvania.

21.    At the same time, Francis Lynch was operating a 2002 Ford F250 Truck traveling westbound on Kutztown Road.

22.    Francis Lynch was driving the truck under the influence of intoxicating beverages.

23.    At around 10:56 p.m. on April 4, 2012, Francis Lynch abruptly made a left turn into the eastbound, oncoming lane for travel of Kutztown Road, turning his vehicle directly into the path of Barry Good's motorcycle, resulting in a violent collision

24.    Following the crash, the police arrived on the scene and arrested Francis Lynch for suspected DUI and related crimes.

25.    Francis Lynch had blood drawn on 12:37 a.m. on April 5, 2012 which was subjected to chemical testing, and confirmed a blood alcohol content of .136%.

26.    As a result of the collision, Plaintiff's Decedent died of blunt force trauma.

27.    The death of Plaintiff Florence Good's Decedent, Barry Good, was caused by the negligence and carelessness of Francis Lynch.

**Tort Claim**

28.    At the time of the April 4, 2012 collision, there existed in full force and effect a Personal Automobile Policy issued by Safe Auto Insurance to Francis Lynch providing coverage in accordance with the requirements of the MVFRL.

29.    The Personal Auto Policy issued Safe Auto Insurance to Francis Lynch provided, *inter alia,* $15,000.00 in liability coverage.

30.     Following the motor vehicle crash, Plaintiff, Florence Good, made claim upon Francis Lynch for recovery of damages in tort.

31.     Following receipt of the claim for recovery of damages in tort, Safe Auto Insurance made an offer of $15,000.00, the liability limits of Francis Lynch's policy.

32.     The tort claims of Plaintiff, Florence Good, against Francis Lynch settled for the $15,000.00 liability limit of coverage.

33.     The $15,000.00 limit of liability coverage under the Safe Auto policy is insufficient to compensate Plaintiff, Florence Good, for the damages arising from the death of Plaintiff's Decedent, Barry Good.

34.     There is no other liability claim possible, and the claims against the bar where Francis Lynch became intoxicated have also been exhausted. See *Good v. Frankie & Eddie's Hanover Inn, LLP*, 171 A.3d 792 (Pa. Super. 2017).

35.     Francis Lynch is an underinsured motorist as defined by the Good Travelers Policy and the MVFRL.

**Underinsured Motorist Claim (Progressive Policy)**

36.     Following the April 4, 2012 motor vehicle crash, Plaintiff, Florence Good, made claim upon Progressive for recovery of underinsured motorist benefits under the Progressive Policy insuring the 2009 Kawasaki Volcan Motorcycle.

37.     Following receipt of the claim for recovery of underinsured motorist benefits, Progressive insurance provided the $100,000.00 limit of underinsured motorist coverage under the Progressive Policy.

38.     The limits of liability coverage of the policy issued by Safe Auto Insurance to Francis Lynch and the limits of primary underinsured motorist coverage of the Progressive

5

Policy are insufficient to compensate Plaintiff, Florence Good, for the damages arising from the death of Decedent, Barry Good, in the April 4, 2012 motor vehicle crash.

### Underinsured Motorist Claim (Travelers Policy)

39.     Following the April 4, 2012 motor vehicle crash, Plaintiff, Florence Good, made claim upon Defendant, Travelers, seeking recovery of underinsured motorist benefits under the Travelers Policy.

40.     By letter dated February 19, 2019, counsel for Plaintiff, Florence Good, wrote to Defendant, Travelers, regarding the underinsured motorist claim.  A true and correct copy of the February 7, 2018 correspondence is attached as Exhibit B.

41.     In the letter, Plaintiff informed Travelers that the household exclusion has been determined to be unenforceable by the Pennsylvania Supreme Court.

42.     Defendant, Travelers, has denied coverage for underinsurance; the denial and disclaimer of coverage premised upon the household exclusion is violative of the MVFRL in that it abrogates the inter-policy stacking of the underinsured motorist coverage of the Travelers Policy for which a specific, additional premium was charged and accepted.

### Stacking of Underinsured Motorist Coverage

43.     Under the MVFRL, uninsured and underinsured motorist coverages are to be stacked unless waived by the named insured.

44.     Section 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law provides, in pertinent part:

> (a) **Limit for each vehicle**. - When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limits for uninsured or underinsured coverage shall apply separately to each

vehicle so insured. The limits of coverage available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver**. - Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking or uninsured or underinsured coverage in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) **More than one vehicle**. - Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase as described coverage as described in subsection (b). The premiums for an insured who exercise such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. §§ 1738(a)(b) and (c).

45.    Stacking of uninsured and underinsured motorist coverages includes both intra-policy stacking and inter-policy stacking.

46.    Intra-policy stacking is the cumulation of multiple coverages under a single policy; inter-policy stacking is the cumulation of multiple coverages under multiple policies in a household.

7

47.    Because the motorcycle was insured under the same household as the Good Travelers policy, Plaintiff's Decedent Barry Good, is entitled to recover stacked underinsured motorist benefits under the Good Travelers Policy.

**Eligibility to Recover**

48.    Plaintiff's Decedent, Barry Good, was a Name Insured; therefore, Plaintiff's Decedent Barry Good is an insured person for purposes of recovery of underinsured motorist benefits under the Good Travelers Policy.

49.    Plaintiff, Florence Good, as Executor to the Estate of Barry Good is eligible to recover underinsured motorist benefits under the Good Travelers Policy.

50.    Under the Personal Auto Policy issued by Defendant, Travelers, to Florence Good and Barry Good, *underinsured motor vehicle* is defined as follows:

> An underinsured auto is:
>
> A land motor vehicle or "trailer" of any type to which a bodily injury liability bond or policy applies at the time of the crash but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

See Exhibit A, Underinsured Motorist Insurance Coverage.

51.    The vehicle operated by Francis Lynch has insufficient liability coverage to pay for the losses and damages sustained by Plaintiff, Florence Good, in the April 4, 2012 motor vehicle crash; therefore, the vehicle operated by Francis Lynch is an underinsured motor vehicle.

52.    The limits of liability coverage of the policy issued by Safe  Auto to Francis Lynch and the limits of primary underinsured motorist coverage of the Progressive Policy, are

8

insufficient to compensate Plaintiff, Florence Good, for the damages arising from the death of Decedent, Barry Good, in the motor vehicle crash.

53.     Plaintiff, Florence Good, is entitled to and eligible for recovery of stacked underinsured motorist benefits under the Good Travelers Policy.

### Disclaimer of Coverage

54.     The denial and disclaimer of underinsured motorist coverage under the Good Travelers Policy was based upon the household exclusion contained in that policy.

55.     The household exclusion contained in the Travelers Policy provides:

> **EXCLUSIONS – What is not covered**
>
> **Travelers** will not pay any damages an insured person is legally entitled to recover because of . . . .
>
> **Bodily injury** to you or a resident relative while in, on, getting into or out of or when struck by a **motor vehicle** owned or leased by **you** or a **resident** relative which is not insured for Underinsured Motorist Coverage under this policy.
>
> . . . .
>
> See Exhibit A, Underinsured Motorist Insurance Coverage SU, p. 20.

56.     The household exclusion contained in the Good Travelers Policy eliminates the stacking benefit to which Florence Good and Barry Good are entitled.

57.     Florence Good and Barry Good did not knowingly, intelligently, or validly waive or reject stacking under the Good Travelers Policy.

58.     The stacking benefit under the Good Travelers Policy includes inter-policy stacking.

59.     The household exclusion is a hidden and disguised waiver of inter-policy stacking under the Good Travelers Policy.

60.     The legislature has stated that stacking may only be waived when the named insured signs a form as set forth in the MVFRL.

61.     Section 1738 of the MVFRL provides, in pertinent part:

Forms.-

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection from: UNINSURED COVERAGE LIMITS  By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduces to the limits stated in the policy. I knowingly and voluntarily reject the staked limits of coverage. I understand that my premium will be reduced if I reject this coverage.

_____

Signature   of   First   Named   Insured

_____

Date

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits on underinsured motorist coverage by signing the following written rejection form: UNDERINSURED COVERAGE LIMITS By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits

10

of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject that stacked limits of coverage. I understand that my premium will be reduced if I reject this coverage.

_____

Signature of First Named Insured

_____

Date

(e) Signature and date. - The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S.A. §§ 1738(d) (e).

62.    Neither Florence Good nor Barry Good signed a Rejection of Stacked Underinsured Coverage Limits.

63.    Florence Good and Barry Good did not knowingly, intelligently, and/or validly waive or reject stacking for the Good Travelers Policy.

64.    The denial and disclaimer of stacked underinsured motorist coverage by reason of the household exclusion to Plaintiff, Florence Good, D is illegal and violative of the MVFRL.

65.    The household exclusion is a disguised and hidden waiver of stacking of inter-policy underinsured motorist coverage to which Florence Good and Barry Good never agreed or consented.

11

**Niko Cepeda Claim**

66.     At all times material hereto, there existed, in full force and effect, a Pennsylvania Automobile Insurance Policy issued by GEICO to Mario Cepeda ("GEICO Policy") providing coverage in accordance with the MVFRL.

67.     The GEICO Policy provides, *inter alia*, stacked underinsured motorist coverage of $100,000.00.

68.     GEICO tendered the full stacked underinsurance policy limits of $100,000.00 to Niko Cepeda for the crash that occurred on August 11, 2016.

69.     At all times material hereto, there existed, in full force and effect, a Pennsylvania Automobile Insurance Policy (No. 996032477 203 1) issued by Defendant, Travelers, to Mario Cepeda ) ("Cepeda Travelers Policy"), providing coverage in accordance with the MVFRL.  A true and correct copy of the Cepeda Travelers Policy is attached hereto and marked as Exhibit C.

70.     The Cepeda Travelers Policy issued provides, inter alia, $250,000.00 in stacked underinsured motorist coverage.

**Crash**

71.     On August 11, 2016, at around 8:30 p.m. Niko Cepeda was driving a 1979 Harley Davidson westbound on Penn Avenue (SR 0422) in Spring Township, Berks County, Pennsylvania.

72.     At the same time, Connie Sattizahn was preparing to make a left out of a Wawa parking lot in order to go eastbound on Penn Avenue (SR 0422).

73.     Connie Sattizahn pulled into the westbound lane of Penn Avenue directly in front of Niko Cepeda.

74.    The negligence and carelessness of Connie Sattizahn caused a violent collision between Connie Sattizahn and Niko Cepeda that happened with such force that Niko Cepeda was thrown from his motorcycle,

75.    As a result of the collision, Plaintiff, Niko Cepeda, sustained serious and permanent injuries.

76.    The serious and permanent injuries sustained by Niko Cepeda were caused by the negligence and carelessness of Connie Sattizahn.

**Tort Claim**

77.    At the time of the August 11, 2016 collision, there existed in full force and effect a Personal Automobile Policy issued by State Farm Mutual Automobile Insurance Company ("State Farm") to Connie Sattizahn providing coverage in accordance with the requirements of the MVFRL.

78.    The Personal Auto Policy issued by State Farm to Connie Sattizahn provided, inter alia, $100,000.00 in liability coverage.

79.    Following the motor vehicle crash, Plaintiff, Niko Cepeda, made claim upon Connie Sattizahn for recovery of damages in tort.

80.    Following receipt of the claim for recovery of damages in tort, State Farm tendered to Plaintiff, Niko Cepeda, the $100,000.00 liability limit of coverage on behalf of Connie Sattizahn.

81.    The tort claims of Plaintiff, Niko Cepeda, against Connie Sattizahn settled for the $100,000.00 liability limit of coverage.

82.    The $100,000.00 limit of liability coverage under the State Farm policy is insufficient to compensate Plaintiff, Niko Cepeda, for the serious injuries and damages sustained in the crash.

83.    Connie Sattizahn is an underinsured motorist as defined by the Cepeda Travelers Policy and the MVFRL.

## Underinsured Motorist Claim (GEICO Policy)

84.    Following the August 11, 2016 motor vehicle crash, Plaintiff, Niko Cepeda, made claim upon GEICO for recovery of underinsured motorist benefits under the GEICO Policy.

85.    Following receipt of the claim for recovery of underinsured motorist benefits, GEICO tendered to Plaintiff, Niko Cepeda, the $100,000.00 stacked limit of underinsured motorist coverage under the GEICO Policy.

86.    The limits of liability coverage of the State Farm policy issued to Connie Sattizahn and the limits of primary underinsured motorist coverage of the GEICO Policy are insufficient to compensate Plaintiff, Niko Cepeda, for the serious and permanent injuries sustained in the August 11, 2016 motor vehicle crash.

## Underinsured Motorist Claim (Cepeda Travelers Policy)

87.    Following the August 11, 2016 motor vehicle crash, Plaintiff, Niko Cepeda, made claim upon Defendant, Travelers, seeking recovery of underinsured motorist benefits under the Cepeda Travelers Policy.

88.    Following receipt of the claim for recovery of underinsured motorist benefits under the Cepeda Travelers Policy, Defendant, Travelers, denied and disclaimed the claim of Niko Cepeda.

89.     By letter dated January 24, 2017, Travelers denied underinsured motorist benefits relying on a household exclusion. The letter states in pertinent part:

> Since the injuries that were sustained by your client occurred while he was occupying a 1979 Harley Davidson that is owned by our policyholder Mario Cepeda and was not insured for this coverage under the Travelers Policy Exclusion B will apply.

A true and correct copy of the January 24, 2017 letter is attached as Exhibit D.

90.     By letter dated April 3, 2019, counsel for Plaintiff, Niko Cepeda, wrote to Defendant, Travelers, regarding the underinsured motorist claim explaining that the household exclusion is invalid.  A true and correct copy of the April 3, 2019 correspondence is attached as Exhibit E.

91.     Defendant, Travelers, has refused to withdraw the disclaimer of coverage; the denial and disclaimer of coverage premised upon the household exclusion is violative of the MVFRL in that it abrogates the inter-policy stacking of the underinsured motorist coverage of the Cepeda Travelers Policy.

**Stacking of Underinsured Motorist Coverage**

92.     Under the MVFRL, uninsured and underinsured motorist coverages are to be stacked unless waived by the named insured.

93.     Section 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law provides, in pertinent part:

> (a)  Limit for each vehicle. - When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limits for uninsured or underinsured coverage shall apply separately to each vehicle so

15

insured. The limits of coverage available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b)  Waiver. - Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking or uninsured or underinsured coverage in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle. - Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase as described coverage as described in subsection (b). The premiums for an insured who exercise such waiver shall be reduced to reflect the different cost of such coverage.

75    C.S.A. §§ 1738(a)(b) and (c).

94.    Stacking of uninsured and underinsured motorist coverages includes both intra-policy stacking and inter-policy stacking.

95.    Intra-policy stacking is the cumulation of multiple coverages under a single policy; inter-policy stacking is the cumulation of multiple coverages under multiple policies in a household.

96.    Mario Cepeda did not knowingly, intelligently, and/or validly reject or waive stacked underinsured motorist coverage under the Cepeda Travelers Policy.

16

97.     As a resident relative of the household of Mario Cepeda, Plaintiff, Niko Cepeda, is entitled to recover stacked underinsured motorist benefits under the Cepeda Travelers Policy.

**Eligibility to Recover**

98.     The Insuring Agreement of the Underinsured Motorist Coverage of the Cepeda Travelers Policy defines insured person as either a named insured or a family member of a named insured.

99.     Plaintiff, Niko Cepeda, was a family member of the named insured, Mario Cepeda; therefore, Plaintiff, Niko Cepeda, is an insured person for purposes of recovery of underinsured motorist benefits under the Cepeda Travelers Policy.

100.    Plaintiff, Niko Cepeda, is eligible to recover underinsured motorist benefits under the Cepeda Travelers Policy.

101.    Under the Cepeda Travelers Policy, underinsured motor vehicle is a land motor vehicle or "trailer" of any type to which a bodily injury liability bond or policy applies at the time of the crash but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

102.    The vehicle operated by Connie Sattizahn has insufficient liability coverage to pay for the losses and damages sustained by Plaintiff, Niko Cepeda, in the August 11, 2016 motor vehicle crash; therefore, the vehicle operated by Connie Sattizahn is an underinsured motor vehicle.

103.    The limits of liability coverage of the policy issued by State Farm to Connie Sattizahn and the limits of primary underinsured motorist coverage of the GEICO Policy

are insufficient to compensate Plaintiff, Niko Cepeda, for the serious and permanent injuries sustained in the August 11, 2016 motor vehicle crash.

104.    Plaintiff, Niko Cepeda, is entitled to and eligible for recovery of stacked underinsured motorist benefits under the Cepeda Travelers Policy.

## Disclaimer of Coverage

105.    The denial and disclaimer of underinsured motorist coverage under the Cepeda Travelers Policy was based upon the household exclusion contained in that policy.

106.    The household exclusion contained in the Cepeda Travelers Policy provides:

> EXCLUSIONS – We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by you or any "resident relative" while "occupying" or when struck by any motor vehicle that you or any "resident relative" owns; or that is furnished or available for your or any "resident relatives" regular use, which is not insured for this coverage under this policy
>
> . . . . .

107.    The household exclusion contained in the Cepeda Travelers Policy purportedly eliminates the stacking benefit that Mario Cepeda never knowingly, intelligently, and/or validly waived.

108.    Since Mario Cepeda did not knowingly, intelligently, and/or validly waive inter-policy stacking, Niko Cepeda, Mario Cepeda's resident relative, may recover additional, stacked underinsured motorist benefits under the Cepeda Travelers Policy.

109.    The household exclusion is a hidden and disguised waiver of inter-policy stacking under the Cepeda Travelers Policy.

110.    The legislature has stated that stacking may only be waived when the named insured

signs a form as set forth in the MVFRL.

111.    Mario Cepeda did not knowingly, intelligently, and/or voluntarily sign a Rejection

of Stacked Underinsured Coverage Limits on the Cepeda Travelers Policy, which means

the Cepeda Travelers Policy includes inter-policy stacking.

112.    As a resident relative of Mario Cepeda, Plaintiff, Niko Cepeda, is eligible for

recovery of stacked underinsured motorist coverage under the Cepeda Travelers Policy.

113.    The denial and disclaimer of stacked underinsured motorist coverage by reason of

the household exclusion to Plaintiff, Niko Cepeda, is illegal and violative of the MVFRL.

114.    The household exclusion is a disguised and hidden waiver of stacking of inter-policy

underinsured motorist coverage to which Mario Cepeda never agreed or consented.

**Class Action Allegations**

115.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf

of the following class (the "Class"):

> All persons residing in Pennsylvania injured in motor vehicle crashes from 1990 to
> the present as a result of the negligence of an uninsured or an underinsured motorist
> who were insureds under Automobile Policies providing uninsured and/or
> underinsured motorist coverage in accordance with the MVFRL and where: (a) the
> named insured never knowingly, intelligently, and/or validly waived stacking; (b) a
> claim was made for recovery of uninsured and/or underinsured motorist coverage
> under the policy; (c) the claim for recovery of uninsured or underinsured motorist
> coverage was denied by reason of the household exclusion; and (d) inter-policy
> stacking of underinsured motorist benefits was denied to an otherwise eligible
> claimant by reason of the household exclusion where, nonetheless, the named
> insured had never knowingly, intelligently, and/or validly waived stacking of
> uninsured and/or underinsured motorist coverage under the policy.

116.    Excluded from the Class are: governmental entities; Defendant; any entity in which

Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal

representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any

judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

117.    Subject to additional information obtained through further investigation and/or discovery, the foregoing Class may be expanded narrowed by amendment or amended complaint.

118.    Members of the Class are so numerous that joinder is impracticable. While the exact number of Class members is unknown to Plaintiffs, it is believed that the Class is comprised of thousands of members disbursed throughout Pennsylvania. The Class, however, is readily identifiable from information and records in the possession of Defendant.

119.    Common questions of law and fact exist as to all members of the Class. The critical questions of law and fact common to the Class that will materially advance the litigation is whether Defendant, Travelers, has continuously, systematically, wrongfully and wantonly denied and/or failed to acknowledge the availability of stacked uninsured and underinsured motorist coverages under policies issued in accordance with the requirements of the MVFRL by reason of the household exclusion under policies where stacked coverage has not been knowingly, intelligently and/or validly waived. The resolution of these common questions of law and fact will, in turn, drive the resolution of the litigation.

120.    Additional common legal and factual questions that will also drive the resolution of the litigation include, but are not limited to:

        (a) Each member of the class suffered injury as a result of the negligence of an uninsured and/or underinsured motorist;

(b)  Each member of the class is eligible as a named insured or an insured to recover uninsured and/or underinsured motorist benefits under a policy of insurance issued by Defendant, Travelers, which provided stacked uninsured and/or underinsured motorist coverage in accordance with the MVFRL;

(c)  Each policy under which each class member is eligible to recover uninsured and/or underinsured motorist benefits in connection with injuries sustained in a motor vehicle crash;

(d)  Under each policy, the named insured never knowingly, intelligently, and/or validly waived stacking;

(e)  Under each  policy, a named insured or an insured made claim for recovery of uninsured and/or underinsured motorist benefits under the policy providing stacked coverage;

(f)  Under each policy, the claim for recovery of uninsured and/or underinsured motorist benefits was denied by reason of the household exclusion contained in the policy;

(g)  The denial and disclaimer of uninsured and/or underinsured motorist coverage by reason of the household exclusion is illegal and violative of the terms and provisions of the MVFRL;

(h)  The household exclusion contained in each policy is a hidden and disguised stacking waiver which is violative of the terms and provisions of the MVFRL;

(i)  Each member of the class is entitled to a declaration that he or she is entitled to recover underinsured motorist benefits under the policy of insurance issued by Defendant, Travelers, under which claim has been made;

21

(j)   Each member of the class is entitled to recover stacked uninsured and/or underinsured motorist benefits under the policy of insurance issued by Defendant, Travelers, under which claim has been made.

121.   The claims of Plaintiffs, Florence Good and Niko Cepeda, are typical of the claims of other members of the class which they purport to represent as all such claims arise out of Defendant's continuous and systematic illegal and unlawful conduct under the MVFRL as it relates to the Automobile Policies of all class members.

122.   Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs have no interests antagonistic to, or in conflict with, the Class that they seek to represent. Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation including but not limited to insurance litigation.

123.   A class action is the only practicable means available for the members of the Class to pursue the appropriate remedies and receive the necessary underinsured motorist benefits under the policies of insurance in question.

124.   The class action mechanism is superior to other available means for the fair and efficient adjudication of the claims of all Class members. Besides the predominance of questions common to all Class members, individual Class members lack resources to undertake the burden and expense of individual prosecution of these claims against large corporate defendants like Defendant, Travelers, especially in comparison with the maximum individual recovery to which each Class member would be entitled. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.

It also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

**COUNT I**
**(<u>Declaratory Relief – Eligibility Individual and Class Claims</u>)**

125.    Plaintiffs, Florence Good and Niko Cepeda, hereby incorporate by reference the foregoing Paragraphs 1 through 124 of this Complaint as though same were fully set forth herein.

126.    The Good Travelers Policy and the Cepeda Travelers Policy provide stacked underinsured motorist coverage.

127.    There was no knowing, intelligent, and/or valid waiver of stacked underinsured motorist coverage under the Good Travelers Policy and the Cepeda Travelers Policy.

128.    Each named insured under each policy within the class had inter-policy stacked insurance, because they did not knowingly, intelligently, and/or validly waive stacking.

129.    Plaintiffs, Florence Good and Niko Cepeda, are eligible to recover inter-policy stacked underinsured motorist benefits under their Travelers Policies.

130.    Each member of the class is entitled to recover uninsured or underinsured motorist benefits under the applicable policy.

131.    Defendant, Travelers, has denied and disclaimed coverage for underinsured motorist benefits to Florence Good and Niko Cepeda under their Travelers Policies by reason of the household exclusion contained in each policy.

132.    Defendant, Travelers, has denied and disclaimed coverage to each member of the class by reason of the household exclusion.

133.    The household exclusion is a hidden and disguised stacking waiver, and is thus violative of the MVFRL.

134.    In order to effectuate a valid waiver of stacked underinsured motorist coverage, a named insured must sign a form as prescribed by § 1738 of the MVFRL, 75 Pa.C.S.A. § 1738.

135.    There was no knowing, intelligent, and/or valid waiver of stacking as required by the MVFRL.

136.    The named insureds under the policies applicable to the claims of each member of the class did not knowingly, intelligently, and/or validly waive stacked underinsured motorist coverage; at no time did the named insured under any such policy sign any waiver of stacking under each policy in question.

137.    Plaintiffs, Florence Good and Niko Cepeda, are entitled to recover stacked underinsured motorist coverage under the Travelers Policy.

138.    Each member of the class is entitled to recover uninsured or underinsured motorist benefits under the applicable policy.

139.    Defendant, Travelers, has wrongfully, willfully and wantonly refused to provide underinsured motorist coverage to Plaintiffs, Florence Good and Niko Cepeda, under each Travelers Policy.

140.    The refusal of Defendant, Travelers, to make underinsured motorist coverage available to Plaintiffs, Florence Good and Niko Cepeda, under each Travelers Policy is unlawful, illegal and in wanton and willful disregard of the rights of Plaintiffs, Florence Good and Niko Cepeda.

141.    The denial and disclaimer of underinsured motorist coverage to Plaintiffs, Florence Good and Niko Cepeda, under each Travelers Policy is a material breach of their policies.

142.    The denial and disclaimer of underinsured motorist coverage to Plaintiffs, Florence Good and Niko Cepeda, under each Travelers Policy is in direct violation of the specific terms and provisions of the MVFRL

143.    The refusal of Defendant, Travelers, to make uninsured and/or underinsured motorist coverage available to the members of the class is in violation of the specific terms of the MVFRL.

144.    The denial and disclaimer of underinsured motorist benefits to each member of the class is a wrongful, wanton and willful breach of each policy of insurance providing stacked uninsured and/or underinsured motorist coverage issued by Defendant, Travelers.

145.    Defendant, Travelers, has acted wantonly, willfully and in reckless disregard of the rights of Plaintiffs, Florence Good and Niko Cepeda.

146.    Defendant, Travelers, has acted wantonly, willfully and in reckless disregard of the rights of each member of the class.

147.    Plaintiffs, Florence Good and Niko Cepeda, are entitled to a declaration that they are entitled to recover underinsured motorist coverage under each Travelers Policy.

148.    Each member of the class is entitled to a declaration that he and/or she is entitled to recover stacked uninsured and/or underinsured motorist coverage under the pertinent policy of insurance issued by Defendant, Travelers.

149.    The controversy poses an issue for judicial determination under the Declaratory Judgment Act.

150.    The controversy involves substantial rights of the parties to the action.

151.    The controversy poses an issue for judicial determination which is not within the scope of authority of any arbitrator or arbitration panel pursuant to the policy of insurance in question.

152.    A judgment of this court in this action will also be useful for the purpose of clarifying and settling the legal relations at issue between the parties.

153.    A judgment of this court will determine, terminate and afford relief from the uncertainty and controversy giving rise to this action.

154.    Plaintiffs, Florence Good and Niko Cepeda, and members of the class are entitled to counsel fees as a result of the vexatious and obdurate conduct of Defendant, Travelers, in the handling and defense of these underinsured motorist claims.

WHEREFORE, Plaintiff, Florence Good, respectfully requests that the Court enter an Order:

> (a) declaring that Plaintiff, Florence Good, is entitled to recover underinsured motorist coverage under the Personal Auto Policy issued by Defendant, Travelers, to Florence Good and Barry Good in connection with death of Florence Good's Decedent Barry Good, in the April 4, 2012 motor vehicle crash;

> (b) declaring that Plaintiff, Niko Cepeda, is entitle to recover underinsured motorist coverage under the Personal Auto Policy issued by Defendant Travelers, to Mario Cepeda in connection with the injuries Niko Cepeda sustained in the August 11, 2016 crash;

> (c) declaring that each member of the class is entitled to recover uninsured and/or underinsured motorist coverage under the applicable policy providing stacked uninsured and/or underinsured motorist coverage;

> (d) awarding interest, counsel fees and costs; and

> (e) such other relief as the court deems appropriate.

## COUNT II
### (Declaratory Relief – Amount – Individual Claim)

155.    Plaintiffs Florence Good and Niko Cepeda, hereby incorporate by reference the foregoing Paragraphs 1 through 154 of this Complaint as though same were fully set forth herein.

156.    The MVFRL requires underinsured motorist coverage to be provided in limits equal to the liability coverage of the policy unless the named insured elects lower limits in accordance with the mandate of the statute.

157.    Section 1731 of the Pennsylvania Motor Vehicle Financial Responsibility Law provides, in pertinent part:

> (a) Mandatory offering. – No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage).
>
> . . . .

75 Pa.C.S. §1731.

158.    Section 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law provides, in pertinent part:

> A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S. § 1734.

27

159.    Unless the named insured requests lower limits of underinsured motorist coverage pursuant to 75 Pa.C.S.A § 1734, the insurer must provide that coverage in limits equal to the bodily injury liability coverage of the policy.

160.    Neither Barry and Florence Good nor Mario Cepeda elected lower limits of underinsured motorist coverage.

161.    Florence and Barry Good never signed an Election of Lower Limits of Underinsured Motorist Coverage for the Good Travelers Policy.

162.    Mario Cepeda never signed an Election of Lower Limits of Underinsured Motorist Coverage for the Cepeda Travelers Policy.

163.    Any Election of Lower Limits of Underinsured Motorist Coverage for the Good Travelers Policy is void and unenforceable.

164.    Any Election of Lower Limits of Underinsured Motorist Coverage for the Cepeda Travelers Policy is void and unenforceable.

165.    Defendant, Travelers, is required to provide full Underinsured Motorist Coverage to Florence Good and Niko Cepeda.

166.    The controversy poses an issue for judicial determination under the Declaratory Judgment Act.

167.    The controversy involves substantial rights of the parties to the action.

168.    The controversy poses an issue for judicial determination which is not within the scope of authority of any arbitrator or arbitration panel pursuant to the policy of insurance in question.

169.    A judgment of this Court in this action will serve a useful purpose in clarifying and settling the legal relations at issue between the parties.

170.    A judgment of this Court will determine, terminate and afford relief from the uncertainty and controversy giving rise to this action.

WHEREFORE, Plaintiffs, Florence Good and Niko Cepeda, respectfully requests that the Court enter an Order declaring that the Personal Auto Policy issued by Defendant, Travelers Property Casualty Company of America, is required to provide $200,000.00 in stacked underinsured motorist benefits to Plaintiff, Florence Good as Executor to the Estate of Barry Good and 250,000.00 in stacked underinsured motorist benefits to Plaintiff, Niko Cepeda.

## COUNT III
### (Compensatory Relief – Individual and Class Claims)

171.    Plaintiffs, Florence Good and Barry Good, hereby incorporates by reference the foregoing Paragraphs 1 through 170 of this Complaint as though the same were fully set forth herein.

172.    The Insuring Agreement of the Underinsured Motorist Coverage part of the Travelers Policy provides, in pertinent part:

> We will pay compensatory damages which an "insured" is legally entitled to recover . . . because of "bodily injury": 1. Sustained by an "insured"; and 2. Caused by an accident.

See Exhibit A, Underinsured Motorist Insurance Coverage, P. 1 of 7

173.    Under the Travelers Policy, *insured person* is defined as you and any resident relative.

174.    The Travelers Policy defines "you" as the Named Insured.

175.    Plaintiff, Florence Good's Decedent, Barry Good, was a named insured, and so he was an insured person for purposes of recovery of underinsured motorist benefits under the Good Travelers Policy.

176.    Niko Cepeda was a resident relative of the named insured Mario Cepeda; therefore, Plaintiff, Niko Cepeda, is an insured person for purposes of recovery of underinsured motorist benefits under the Cepeda Travelers Policy.

177.    Plaintiff, Florence Good, acting on behalf of her Decedent Barry Good, is eligible to recover underinsured motorist benefits under the Good Travelers Policy.

178.    Plaintiff, Niko Cepeda, is eligible to recover underinsured motorist benefits under the Cepeda Travelers Policy.

30

179.    Plaintiffs, Niko Cepeda and Florence Good, are eligible to receive underinsurance benefits under each Travelers plans because the vehicles causing injury to Niko Cepeda and Decedent, Barry Good, were underinsured motor vehicles according to their Travelers Policies and the MVFRL.

180.    The limits of liability coverage of the policy issued by Safe Auto to Francis Lynch and the limits of primary underinsured motorist coverage of the Progressive Policy issued to Plaintiff, Florence Good, are insufficient to compensate Plaintiff, Florence Good, for the damages caused by the death of Barry Good in the April 4, 2012 motor vehicle accident.

181.    Therefore, Plaintiff, Florence Good, is entitled to and eligible for recovery of inter-policy stacked underinsured motorist benefits under the Good Travelers Policy.

182.    The limits of liability coverage issued by State Farm to Connie Sattizahn and the limits of primary underinsured motorist coverage of the GEICO Policy are insufficient to compensate Plaintiff, Niko Cepeda, for the serious and permanent injuries sustained in the August 11, 2016 motor vehicle crash.

183.    Therefore, Plaintiff, Niko Cepeda, is entitled to and eligible for recovery of inter-policy stacked underinsured motorist benefits under the Cepeda Travelers Policy.

184.    Plaintiff, Niko Cepeda, sustained serious and permanent personal injury in the August 11, 2016 motor vehicle crash as a result of the negligence and carelessness of the underinsured motorist, Connie Sattizahn.

185.    The negligence and carelessness of Connie Sattizahn consisted of, inter alia:

(a) failing to keep a proper lookout;

(b) failing to maintain control of her vehicle;

(c) pulling her car into the road directly in front of Niko Cepeda when Niko Cepeda had the right of way;

(d) violating the statutes and ordinances applicable to the operation of motor vehicles;

(e) being otherwise negligent in law or in fact.

186.    In the August 11, 2016 motor vehicle crash, Plaintiff, Niko Cepeda, sustained, *inter alia*:

(a) severe trauma to various and extensive parts of his body;

(b) an injury to his leg, which required amputations;

(c) road burns to his skin so severe that they required numerous skin grafts; and

(d) such other injuries and damages as may be developed more fully during discovery

187.    The serious and permanent injuries sustained by Plaintiff, Niko Cepeda, were a direct result of the negligence and carelessness of Connie Sattizahn, the operator of the underinsured motor vehicle.

188.    The Decedent, Barry Good, died of blunt force trauma in the April 4, 2012 motor vehicle crash as a result of the negligence and carelessness of the underinsured motorist, Francis Lynch.

189.    The negligence and carelessness of Francis Lynch consisted of, inter alia:

(a) failing to keep a proper lookout;

(b) failing to maintain control of his vehicle;

(c) turning left directly in front of Barry Good when Barry Good had the right of way;

(d) violating the statutes and ordinances applicable to the operation of motor vehicles;

(e) being otherwise negligent in law or in fact.

190.    In the April 4, 2012 motor vehicle crash, Plaintiff Florence Good's Decedent Barry Good, died as a result of the negligence of Francis Lynch

191.    Defendant, Travelers, has wrongfully, willfully and wantonly refused to provide stacked underinsured motorist coverage to Plaintiffs, Florence Good and Niko Cepeda.

192.    The refusal of Defendant, Travelers, to make underinsured motorist coverage available to Plaintiffs, Florence Good and Niko Cepeda, under each Travelers Policy is unlawful, illegal and in wanton and willful disregard of the rights of Plaintiffs, Florence Good and Niko Cepeda.

193.    The denial and disclaimer of underinsured motorist coverage to Plaintiffs, Florence Good and Niko Cepeda, under each Travelers Policy is in direct violation of the specific terms and provisions of the MVFRL.

194.    Each member of the class suffered injury as a result of the negligence and carelessness of an uninsured or underinsured motorist.

195.    Defendant, Travelers, denied uninsured or underinsured motorist benefits to each member of the class under a policy providing stacked coverage by reason of the household exclusion.

196.    The refusal of Defendant, Travelers, to make uninsured and/or underinsured motorist coverage available to the members of the class is in violation of the specific terms of the MVFRL.

197.    The denial and disclaimer of underinsured motorist benefits to each member of the class is a wrongful, wanton and willful breach of each policy of insurance providing stacked uninsured and/or underinsured motorist coverage issued by Defendant, Travelers.

198.    Defendant, Travelers, has acted wantonly, willfully and in reckless disregard of the rights of Plaintiffs, Florence Good and Niko Cepeda.

199.    Defendant, Travelers, has acted wantonly, willfully and in reckless disregard of the rights of each member of the class.

200.    Plaintiffs, Florence Good and Niko Cepeda, are entitled to recover underinsured motorist benefits under each Travelers Policy.

201.    Each member of the class is entitled to recover stacked uninsured and/or underinsured motorist coverage under the pertinent policy of insurance issued by Defendant, Travelers.

202.    As a result of the negligence and carelessness of Connie Sattizahn, Plaintiff, Niko Cepeda, has suffered and will continue to suffer, throughout the course of his life, pain, restriction and disability.

203.    Each member of the class has suffered and may continue to suffer, throughout the course of his or her life, pain, restriction and disability as a result of the negligence and carelessness of an uninsured or underinsured motorist.

204.    As a result of the negligence and carelessness of Connie Sattizahn, Plaintiff, Niko Cepeda, has sustained serious and permanent injuries which will worsen as he ages.

205.    As a result of the negligence and carelessness of Connie Sattizahn, Plaintiff Niko Cepeda, will need ongoing care.

206.    As a result of the negligence and carelessness of Connie Sattizahn, Plaintiff, Niko Cepeda, has sustained a loss of earnings and an impairment of earning capacity which is permanent and continuing.

207.    Plaintiff, Niko Cepeda, is entitled to recover underinsured motorist benefits under the Cepeda Travelers Policy for the damages and serious injuries he sustained as a result of the August 11, 2016 crash.

34

208.    Plaintiff, Florence Good, is entitled to recover underinsured motorist benefits in the form of Wrongful Death and Survival Act damages under the Good Travelers Policy for the death of Barry Good caused by the motor vehicle crash on April 4, 2012.

209.    As a result of the negligence and carelessness of Francis Lynch, Florence Good lost the companionship and support of her spouse.

210.    Each member of the class sustained injury in a motor vehicle crash as a result of the negligence and carelessness of an uninsured and/or underinsured motorist.

211.    Each member of the class has been denied uninsured and/or underinsured motorist benefits under a policy providing stacked coverage with the denial being based upon the household exclusion.

212.    Each member of the class is entitled to recover uninsured and/or underinsured motorist benefits under the relevant policy under which she and/or she is an insured and/or named insured.

213.    Defendant, Travelers, has breached the terms, agreements, promises and provisions of the Travelers Policy by failing to make payment of stacked underinsured motorist benefits to Plaintiffs, Florence Good and Niko Cepeda.

214.    Defendant, Travelers, has breached the terms, agreements, promises and provisions of each policy of insurance under which each member of the class has made claim for recovery of uninsured and/or underinsured motorist benefits by failing to make payment of the stacked uninsured and/or underinsured motorist benefits in an amount which is fair, reasonable and compensates each member of the class for his and/or her loss.

215.    Plaintiffs, Florence Good and Niko Cepeda, are entitled to recover underinsured motorist benefits from Defendant, Travelers, under each Travelers Policy.

216.    Each member of the class is entitled to recover uninsured and/or underinsured motorist benefits from Defendant, Travelers, under the applicable policy.

WHEREFORE, Plaintiffs, Florence Good and Niko Cepeda, respectfully request that the Court enter an Order:

(a) awarding $200,000.00 in underinsured motorist benefits to Plaintiff, Florence Good as Executor to the Estate of Barry Good, and against Defendant, Travelers Property Casualty Company of America

(b) awarding $250,000.00 in underinsured motorist benefits to Plaintiff, Niko Cepeda and against Defendant, Travelers Property Casualty Company of America; and

(c) awarding uninsured and/or underinsured motorist benefits to each member of the class against Defendant, Travelers Property Casualty Company of America.

## COUNT IV
### (Injunctive Relief—Assertion of Household Exclusion)

217.    Plaintiffs, Niko Cepeda and Florence Good, hereby incorporates by reference the foregoing Paragraphs 1 through 216 of this Complaint as though the same were fully set forth herein.

218.    The Plaintiffs, Florence Good and Niko Cepeda, made claim upon the Defendant, Travelers, for recovery of underinsured motorist benefits in connection with the above mentioned car accidents.

219.    The Travelers Policy issued to the Plaintiffs, Florence Good and Niko Cepeda, provided, *inter alia*, underinsured motorist coverage.

220.    Travelers, denied the claim of the Plaintiffs, Florence Good and Niko Cepeda, for recovery of underinsured motorist benefits, on the basis of a household exclusion in the Cepeda Travelers Policy.

36

221.    In <u>Gallagher v. GEICO</u>, 201 A.3d 121 (Pa. 2019) the Supreme Court of Pennsylvania held that household exclusions in automobile policies in Pennsylvania are void and unenforceable as violative of the MVFRL.

222.    Defendant, Travelers, nonetheless has continued to deny and disclaim coverage for underinsured motorist benefits to the Plaintiffs, Florence Good and Niko Cepeda, on the basis of the household exclusion.

223.    It is believed, and therefore averred, that the Defendant, Travelers, continues to deny and disclaim coverage for uninsured and underinsured motorist benefits under auto policies issued in the Commonwealth of Pennsylvania to otherwise eligible claimants on the basis of the household exclusion, in direct contravention of the <u>Gallagher</u> decision, resulting in irreparable harm to the Plaintiffs, Florence Good and Niko Cepeda, and members of the class.

224.    The Plaintiffs, Florence Good and Niko Cepeda, and members of the class have suffered damages or are at immediate risk of suffering damages as a result of the continued assertion of the household exclusion as a defense to uninsured and underinsured motorist claims in policies issued by the Defendant Travelers.

225.    The household exclusion in motor vehicle policies issued by the Defendant, Travelers, in Pennsylvania is an invalid and unenforceable basis for the denial and disclaimer of uninsured and underinsured motorist claims to otherwise eligible insureds.

226.    The Defendant, Travelers, must be enjoined from continuing to assert the household exclusion in its policies as a defense to uninsured and underinsured motorist claims by otherwise eligible insureds.

WHEREFORE, Plaintiffs, Florence Good and Niko Cepeda, respectfully request that the Court enter an Order:

(a)    enjoining the Defendant, Travelers, from further asserting the household exclusion in the policy issued to the Plaintiffs, Florence Good and Niko Cepeda, as a defense to their underinsured motorist claims;

(b)    enjoining the Defendant, Travelers, from asserting the household exclusion in motor vehicle policies issued in the Commonwealth of Pennsylvania as a defense to claims for recovery of uninsured and underinsured motorist benefits to members of the putative class otherwise eligible for recovery of such benefits; and

(b)  such other relief as the court deems appropriate.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, seek judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representatives and their attorneys as Class Counsel to represent the Class members;

B.    For an order finding in favor of the Plaintiffs and the Class on all counts asserted herein;

C.    For an order awarding damages in an amount to be determined by the Court or jury;

D.    For prejudgment interest on all amounts awarded;

E.    For an order of restitution and all other forms of injunctive and/or equitable relief;

F.    For an order awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs of suit; and

G.    For all further relief, as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: October 29, 2020

Respectfully Submitted By:

**HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.**

James C. Haggerty I.D. # 30003
Suzanne Tighe I.D. #80179
Jeffrey Stanton I.D. #311249
1835 Market Street, Suite 2700
Philadelphia, PA  19103
Phone: (267) 350-6600
Facsimile: (215) 665-8197
Email: jhaggerty@hgsklawyers.com
Email: stighe@hgsklawyers.com
Email: jstanton@hgsklawyers.com

**SCHMIT KRAMER, P.C.**

*/s/ Scott Cooper*_____
Scott C. Cooper
PA Attorney I.D. # 70242
209 State Street
Harrisburg, PA  17101
Phone: (717) 232-6300
Facsimile: (717) 232-64670
Email: scooper@schmidtkramer.com

**SHUB LAW FIRM LLC**

Jonathan Shub
PA Attorney I.D. # 53965
134 Kings Highway East, 2nd Floor
Haddonfield, NJ  08033
Phone: (856) 772-7200
Facsimile: (856) 210-9088
Email: jshub@shublawyers.com

*Attorneys for Plaintiffs and the Proposed Class*

39