**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FLORENCE GOOD AS EXECUTOR TO THE | : |
| ESTATE OF BARRY D. GOOD, | : Case No. 20-CV-5453 |
| DECEASED, AND JESSE FRAZER, | : |
| INDIVIDUALLY AND ON BEHALF OF A | : |
| CLASS OF SIMILARLY SITUATED | : |
| PERSONS, | : |
| | : |
| Plaintiffs, | : |
| | : |
| vs. | : |
| TRAVELERS PROPERTY CASUALTY | : |
| COMPANY OF AMERICA AND | : |
| TRAVELERS INDEMNITY COMPANY, | : |
| | : |
| Defendants. | : |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT AND**
**FOR APPROVAL OF ATTORNEY'S FEES AND EXPENSES**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

III.  THE SETTLEMENT TERMS, NOTICE AND CLAIMS TO DATE .............................. 3

IV.  THE PROPOSED SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL
APPROVAL ....................................................................................................... 6

    A.    Legal Standard ........................................................................................ 6

    B.    The Rule 23(e)(2) Factors Are Satisfied ............................................... 6

    C.    The *Girsh v. Jepson* Factors Are Also Satisfied .................................... 9

          1.    The Complexity, Expense and Likely Duration of the Litigation ........... 10

          2.    The Reaction of the Class and Objectors .................................. 10

          3.    The Stage of the Proceedings and the Amount of Discovery
Completed ...................................................................................... 10

          4 - 5.  The Risks of Establishing Liability and Damages ................................. 11

          6.    The Risk of Maintaining the Class Action Through Trial ....................... 11

          7.    The Ability of the Defendants to Withstand a Greater Judgment.............. 11

          8 - 9.  The Range of Reasonableness of the Settlement Fund in Light of the
Best Possible Recovery and All the Attendant Risks of Litigation .......... 12

V.   THE COURT SHOULD APPROVE CLASS COUNSEL'S ATTORNEY'S
FEES AND EXPENSES ................................................................................... 13

    A.    Courts Encourage Litigants to Reach Agreements on Fees in Class Actions ....... 13

    B.    The Lodestar Method Should be Used to Analyze Counsel's Fee Request ......... 16

          1.    Class Counsel's Hourly Rates Are Reasonable ......................................... 17

          2.    Counsel's Hours Expended Were Necessary and Reasonable .................. 18

          3.    The Size of the Fund Created and the Number of Persons Benefitted ..... 19

          4.    The Presence or Absence of Substantial Objections by Members of the
Class to the Settlement Terms and/or Fees Requested by Counsel .......... 20

5.  The Complexity of the Litigation and the Skill and Efficiency of the Attorneys involved ................................................................ 20

6.  The Risk of Non-Payment ................................................................ 20

C.  The Named Plaintiff Enhancement Award to Ms. Good and Mr. Frazer Should Be Approved ................................................................ 21

D.  Counsel's Costs Should be Reimbursed ................................................................ 22

VI.  CONCLUSION ................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Acevedo v. Brightview Landscapes, LLC,*,
    No. 3:13-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) ................................................. 20

*Allapattah Servs. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ............................................................................ 13

*Alleyne v. Time Moving & Storage Inc.,*
    264 F.R.D. 41 (E.D.N.Y. 2010) ...................................................................................... 14

*Blum v. Stenson*,
    465 U.S. 886 (1984) .......................................................................................................... 17

*Boeing v. Van Gemert*,
    444 U.S. 472 (1980) .......................................................................................................... 14

*Bonett v. Educ. Debt Servs., Inc.*,
    No. 01-6528, 2003 WL 21658267 (E.D. Pa. May 9, 2003) ............................................. 21

*California v. Teva Pharm. Indus.*,
    No. 19-3281, 2020 U.S. Dist. LEXIS 102992, 2020 WL 3128027 (E.D. Pa. June 10,
    2020) ................................................................................................................................... 6

*Carruthers v. Messner Enterprises Northgate,*
    2013 WL 10872127 (34 Pa. D. & C. 5th 476) ................................................................. 14

*City of Burlington v. Dague,*
    505 U.S. 557 (1992) .......................................................................................................... 16

*Cullen v. Whitman Med. Corp.,*
    197 F.R.D. 136 (E.D. Pa. 2000) ...................................................................................... 21

*DeHoyos v. Nationwide Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ................................................................................... 14

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) .......................................................................................................... 13

*Dungee v. Davison Design & Development Inc.*,
    674 Fed.Appx. 153 (3rd Cir. 2017) ................................................................................. 16

*Earley v. JMK Assocs.*,
    No. CV 18-760, 2020 WL 1875535 (E.D. Pa. Apr. 15, 2020) ......................................... 18

*Fein v. Ditech Financial, LLC,*
    No. 5:16-cv-00660, 2017 WL 4284116, (E.D. Pa. Sept. 27, 2017) ................................... 21

*Gallagher v. GEICO Indemnity Company*,
201 A.3d 131 (Pa. 2019) ......................................................................................... 1

*Gascho v. Global Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) ................................................................................ 14

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ......................................................................... 1, 6, 9

*Girsh.*" *Lincoln Adventures LLC*
, 2019 WL 4877563 (D.N.J. Oct. 3, 2019) ........................................................... 12

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
No. 1:18-CV-20048-DPG, 2019 WL 2249941 (S.D. Fla. May 24, 2019) ........................ 14

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ................................................................................ 17

*Halley v. Honeywell Int'l, Inc.*,
861 F.3d 481 (3d Cir. 2017) ................................................................................ 13

*Hensley v Eckerhart*,
461 U.S. 424 (1983) ............................................................................................. 13

*Huffman v. Prudential Ins. Co. of Am.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ............................................................. 7

*In re Apple Computer, Inc. Deriv. Litig.*,
2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ......................................................... 15

*In re AXA Fin., Inc.*,
2002 WL 1283674 (Del. Ch. May 22, 2002) .......................................................... 15

*In re Baby Prods.*,
708 F.3d at 175 (3d Cir. 2013) .............................................................................. 6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........................................................................... 10, 11

*In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*,
269 F.R.D. 468 (E.D. Pa. 2010) ...................................................................... 10, 21

*In re Cigna-American Specialty Health Admin Fee Litig.*,
No. 03967, 2019 WL 4082946 (E.D. Pa., August 29, 2019) ................................. 18

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
333 F.R.D. 364, 2019 WL 4645331 (E.D. Pa. 2019) ............................................... 6

*In re First Capital Holdings Corporation Financial Products Securities Litigation*
19 F.3d 470 (9th Cir. 1994) ................................................................................. 15

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
  55 F.3d 768 (3d Cir.), cert. denied sub nom. *General Motors Corp. v. French,* 516 U.S.
  824 (1995) ............................................................................................................................. 6

*In re Linerboard Antitrust Litig.,*
  296 F. Supp. 2d 568 (E.D. Pa. 2003) ................................................................................... 11

*In re Merck & Co. Vytorin ERISA Litig.,*
  No. 08–CV–285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) ...................................... 18

*In re New Jersey Tax Sales Certificates Antitrust Litig.,*
  750 F. App'x 73 (3d Cir. 2018) ............................................................................................ 12

*In re NFL Players,*
  821 F.3d 410 (3d Cir. 2016) .............................................................................................. 9, 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) ............................................................................................ 11, 14

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,*
  106 F.Supp.2d 721 (D.N.J. 2000) ........................................................................................ 14

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005) ................................................................................................. 16

*In re Sch. Asbestos Litig.,*
  921 F.2d 1330 (3d Cir. 1990) ................................................................................................. 6

*Ingram v. Coca-Cola Co.,*
  200 F.R.D. 685 (N.D. Ga. 2001) .......................................................................................... 15

*Johnson v. Georgia Hwy. Exp., Inc.,*
  488 F.2d 714 (5th Cir. 1974) ................................................................................................ 13

*Kapolka v. Anchor Drilling Fluids USA,* LLC,
  No. 18-1007, 2019 WL 5394751 at *9 (W.D. Pa. Oct. 22, 2019) ........................................ 20

*Lanni v. New Jersey,*
  259 F.3d 146 (3d Cir. 2001) ................................................................................................. 18

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members,*
  No. 08-00235 (CCC), 2019 WL 4877563 (D.N.J. Oct. 3, 2019) ......................................... 21

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,*
  671 F. Supp. 819 (D. Mass. 1987) ....................................................................................... 13

*Maldonado v. Houstoun,*
  256 F.3d 181 (3d Cir. 2001) ........................................................................................... 17, 19

*Marchbanks Truck Serv. v. Comdata Network, Inc.,*
  No. 07-1078, 2014 WL 12738907 (E.D. Pa. July 14, 2014) ................................................ 22

*Masters v. Wilhelmina Model Agency, Inc.,*
    473 F.3d 423 (2d Cir. 2007) ........................................................ 14

*Matter of Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ....................................................... 14

*McBean v. City of New York,*
    233 F.R.D. 377 (S.D.N.Y. 2006) ................................................. 14

*Melito v. American Eagle Outfitters, Inc.*
    2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) ............................ 16

*Potence v. Hazleton Area Sch. Dist.,*
    357 F.3d 366 (3d Cir. 2004) ........................................................ 17

*Rode v. Dellarciprete,*
    892 F.2d 1177 (3d Cir. 1990) ...................................................... 17

*Saint v. BMW of N. Am., LLC,*
    No.12-6105 CCC, 2015 WL 2448846 (D.N.J. May 21, 2015)...... 18

*Samuel-Bassett v. Kia Motors Am., Inc.,*
    613 Pa. 371, 34 A.3d 1 (2011) .................................................... 16

*Sewell v. Bovis Lend Lease, Inc.,*
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ............................. 16

*Stevens v. SEI Investments, Co.,*
    No. 18-4025, 2020 WL 996418 (E.D. Pa., Feb. 28, 2020)........... 18

*Washington v. Phila. Cty. Court of Common Pleas,*
    89 F.3d 1031 (3d Cir. 1996) ........................................................ 14

*Williams v. MGM-Pathe Comm's. Co.,*
    129 F.3d 1026 (9th Cir. 1997) ..................................................... 14

**Rules & Regulations**

Fed. R. Civ. P. 23(h) ............................................................................ 13, 22

Fed. R. Civ. P. 23(b)(3)............................................................................. 3

Fed. R. Civ. P. 23(e)(2)............................................................................. 7

Fed. R. Civ. P. 23(e)(2)(C)(iv), (D) ......................................................... 9

## I.   **INTRODUCTION**

Plaintiffs, by and through Class Counsel, respectfully file this memorandum in support of the motion for final approval of the Class action settlement (the "Settlement") and for approval of attorney's fees and expenses with Defendants Travelers Property Casualty Company of America and Travelers Indemnity Company ("Defendants").  The Settlement resolves nearly five years of litigation arising out of the Pennsylvania Supreme Court's decision in *Gallagher v. GEICO Indemnity Company*, 201 A.3d 131 (Pa. 2019), and *Erie v. Rush Ins Exch.,* 308 A.3d 780 (Pa. 2024).

The proposed Settlement achieves the goal of accountability and fair compensation. It is "fair, reasonable, and adequate" pursuant to Rule 23 (e)(2) of the Federal Rules of Civil Procedure and meets the nine criteria for final settlement approval set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  Plaintiffs request that the Court grant final approval.

Additionally, Class Counsel[1] ("Class Counsel" or "Counsel") is pleased to submit their motion for fees and reimbursement of costs. The efforts of Counsel over the past five years have resulted in a great benefit to affected Class members. Counsel devoted hundreds of hours and spent several thousand dollars in the successful effort to win back sums for Class members who Plaintiffs allege were wrongfully denied benefits they paid for with their insurance policies.

Counsel now seeks, as part of the final approval of the settlement, an award of $1,000,000 inclusive of fees and costs.[2] This amount is independent of the benefits awarded to the Class and will not affect the amounts that will go to Class Members who have submitted valid claims. Counsel seeks this award pursuant to Rule 23(h) of the Federal Rule of Civil Procedure. As

---

[1] Class Counsel refers to the following firms: Shub Johns & Holbrook LLP; Schmidt Kramer, P.C.; and Haggerty, Goldberg, Schleifer, & Kupersmith, P.C.

[2] As discussed below, Class Counsel incurred $4,307.52 in litigation costs.

Counsel demonstrates below, because the requested award is reasonable, Counsel respectfully requests that the Court grant their motion.

## II.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiffs filed this Class action Complaint against Defendants on November 5, 2020. (Dkt 1).

Defendants moved to dismiss the Plaintiffs' Second Amended Complaint on January 5, 2022 (Dkt 26). Defendants argued that Plaintiffs were not entitled to recovery of uninsured or underinsured motorist coverage (UIM) coverage under auto insurance policies issued to them by Defendants because of operation of those policies' household and regular use exclusions. The parties engaged in a protracted motion practice regarding whether there was one Class, or two separate subclasses. On March 3, 2022, Plaintiffs filed their Third Amended Complaint, pleading two subclasses. (Dkt. 44). Defendants have denied all liability and contend they have both viable merits and class defenses to both Classes defined below.

The parties subsequently engaged in discovery regarding the Class definitions and the scope of the Classes. They also commenced intense settlement discussions that culminated, after a full day mediation session and then follow up negotiations between the parties, in the Settlement Agreement, a copy of which was attached to the Declaration of Jonathan Shub ("Shub Decl.") as Exhibit 1. On August 20, 2024, Class Counsel moved for Preliminary Approval of the Settlement. (Dkt. No. 68). This was granted by the Court on September 23, 2024. (Dkt. No. 72)[3]

---

[3] Before turning to the fairness of the Settlement Agreement, Plaintiffs request that Court certify for settlement the proposed Classes for the reasons stated in Plaintiffs' preliminary approval papers (Dkt. No. 68). To reiterate, Plaintiffs satisfy the four prerequisites of Rule 23(a)— numerosity, commonality, typicality, and adequacy—because (1) the Class has several hundred Class members (2) Class members present common claims regarding application of the household and regular use exclusions (3) the circumstances of the Class Representatives reflect those of other Class members, and (4) Plaintiffs are committed to pursuing the interests of the Class and Class Counsel are

III.    <u>**THE SETTLEMENT TERMS, NOTICE AND CLAIMS TO DATE**</u>

Travelers has agreed to pay UM and UIM coverage benefits, with no aggregate cap, to members of the two Settlement Classes who did not opt out and whose claims are timely submitted and qualify for payment. The payment to any individual Class Member will not exceed the Policy Declaration Value for UM/UIM coverage on the Travelers policy in question. Travelers will pay the following to members of each Class:

Class One (which is the household exclusion class): Ninety percent (90%) of the readjusted claim valuation, subject to policy limits. If Travelers contends the person is not a member of this class or otherwise not eligible for benefits, Travelers will submit documentation to Class Counsel substantiating this determination.  In underinsured motorist claims, the credit for the limits of the liability coverage for the motor vehicle tortfeasor will be applied in determining full value. Liability issues, i.e. comparative negligence, will not be considered in assessing value where liability has already been conceded, but liability issues will be considered, but only for up to 30% of the total number of claims made, where there has been no previous concession of liability. Additionally, any other coverage defenses which Travelers could assert in the normal course of business can be asserted in these adjustments so long as not inconsistent with any previous concessions of liability or coverage.  Damages are wholly subject to evaluation in the readjustment of these claims, and Travelers agreed to pay only the actual value of the claim, and only up to policy limits.  Any evaluation by the Travelers Adjuster(s) will be subject to further review by the

---

qualified and do not present any apparent conflict of interest. Plaintiffs also satisfy Rule 23(b)(3) because  common questions of law or fact involving application of the household and regular use exclusions predominate over any questions affecting only individual members and a Class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Travelers is agreeing to class certification for settlement purposes only, and contends that while this case is appropriate for certification of a settlement class it would not be appropriate  for certification of a litigation class.

Neutral Evaluator at the request of Class Counsel on behalf of the claimant. The decision of the Travelers Adjuster(s), if not further reviewed, or the Neutral Evaluator, if further review is sought, will be final.

Class Two (which is the regular use exclusion class): Twenty-Five (25%) of the full value of the claim as determined by the Travelers Adjuster(s) based upon an evaluation of all relevant documentation. If Travelers contends the Person is not a member of this class or not otherwise eligible for benefits, Travelers will submit documentation to Class Counsel substantiating this determination. In underinsured motorist claims, the credit for the limits of the liability coverage for the motor vehicle tortfeasor will be applied in determining full value. Liability issues, i.e., comparative negligence, will not be considered in assessing value where liability had been conceded, but liability issues will be considered, but only for up to 30% of the total number of claims made, where there has been no previous concession of liability. If Class Counsel asserts that the individual was, in fact, more properly a member of Class One, after discussing the dispute with Counsel for Travelers, Class Counsel will request that the neutral evaluator address and resolve the dispute. The decision of the neutral arbitrator on the issue will be final. Additionally, any other coverage defenses which Travelers could assert in the normal course of business can be asserted in these adjustments so long as not inconsistent with any previous concessions of liability or coverage. Damages are wholly subject to evaluation in the readjustment of these claims, and Travelers agreed to pay only the actual value of the claim, and only up to policy limits. Any evaluation by the Travelers Adjuster(s) will be subject to further review by the Neutral Evaluator at the request of Class Counsel on behalf of the claimant. The decision of the Travelers Adjuster(s), if not further reviewed, or the Neutral Evaluator, if further review is sought, will be final.

The notice program was fully complaint with Federal Rule of Civil Procedure and Due Process. Mailed notice was sent to 377 potential Class Members and emailed to 9 potential Class Members. See Angeion Decl ¶ 5-7.[4] The notice advised Class Members of the proposed settlement, their right to opt out or object, the date for the final approval hearing as to the proposed settlement, and other relevant information. Each potential Class Member also received a Claim Form and Settlement Claim Form Notice that provided explanatory information about the claim evaluation process that Travelers has undertaken and continues to undertake. Class Members were also required to submit an authorization permitting the release of their medical records and were asked to submit specific information regarding the motor vehicle accident and the injuries sustained in it for evaluation by Travelers and the possible payment of UM or UIM monies. There were also two subsequent reminder notices sent to potential Class Members who had not yet made a claim at the time the reminder was sent.

The claims process is ongoing and there has been robust participation. Thus far, 77 potential Class members, out of the 386 to whom Notice was mailed, have elected to assert in the settlement process.   Class Members have almost two more months, until September 19, 2025, to submit a claim. After that deadline, Travelers will evaluate each claim and determine if the Class Member is entitled to, and if so, the amount of a UM or UIM payment. If a Class Member does not agree with Travelers' evaluation of the entitlement, or the amount of money that Travelers offered to pay the Class Member, the Class Member's claim will be assigned

---

[4] The Angeion Declaration sets forth in detail the notice program including data on website visits and claim processing.

to a Special Master, retired Judge Wallitsch, who has already been appointed by the Court, to render a final determination.

## IV.    THE PROPOSED SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL <u>APPROVAL</u>

### A.    Legal Standard

Rule 23(e) of the Federal Rules of Civil Procedure governs the approval of any Class action settlement. "The decision of whether to approve a proposed settlement of a Class action is left to the sound discretion of the district court." *Girsh,* 521 F.2d at 156. Amended Rule 23(e) and *Girsh* provide complementary factors the Court is to consider.  For completeness, they are addressed separately below.

There is a strong policy in favor of settling Class actions:

> There remains an overriding public interest in settling Class action litigation, and it should therefore be encouraged. See *G.M. Trucks*, 55 F.3d at 784 ("The law favors settlement, particularly in Class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (noting that the court encourages settlement of complex litigation "that otherwise could linger for years"). As a result, "when evaluating a settlement, a court should be 'hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 2019 WL 4645331, at *10 (E.D. Pa. 2019) (*quoting In re Baby Prods.*, 708 F.3d at 175)).

*California v. Teva Pharm. Indus.*, No. 19-3281, 2020 U.S. Dist. LEXIS 102992, 2020 WL 3128027 (E.D. Pa. June 10, 2020).  That policy should be especially strong where, as here, the settlement is of litigation that challenged long-standing insurance company practices affecting motorists across the Commonwealth.

### B.    The Rule 23(e)(2) Factors Are Satisfied

The Court must determine whether a settlement is "fair, reasonable, and adequate," pursuant to Rule 23(e)(2) by evaluating the following factors:

(A) the Class representatives and Class Counsel have adequately represented the Class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the Class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats Class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "focus the parties [on] the 'core concerns' that motivate the fairness determination." *Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes to 2018 Amendments).

All of these factors strongly favor granting final approval.[5]  To take them in order, Class Counsel have vigorously protected the Class's interests, including through extensive pre- trial motion practice and post-trial settlement administration and outreach.  Class Counsel's work on behalf of the Class has been dedicated and unsparing.

As to whether the settlement was negotiated at arms' length, the settlement negotiations were conducted over many months of incremental litigation, where Class Counsel remained steadfast in their dedication to achieve the maximum possible benefit for claimants.  The settlement was reached in part through a full day mediation session, and then was finalized in follow up

---

[5] The settlement terms are substantially similar to the terms in *Stockdale v. Allstate Fire & Casualty Ins. Co.*, 2:19-cv-845 (E.D.Pa. 2022), where Judge Beetlestone approved the proposed settlement and request for attorney fees. [Dkt. 70].

negotiations between the parties. Additionally, attorneys' fees were not discussed until all the substantive terms of the settlement were agreed upon. And the agreed upon attorneys' fees are outside the contemplation of the Settlement Award and is not a portion of that award.

The third factor is the adequacy of the benefit to the Class. Here, Travelers has agreed to pay UM and UIM coverage benefits to members of the Settlement Class who have not opted out and whose claims are timely submitted and qualify for payment. The payment to any individual Class Member will not exceed the Policy Declaration Value for UM/UIM coverage on the Travelers policy in question. The percentage recoveries (90% for household exclusion claims and 25% for regular use exclusion claims) reflect the law on those issues, and are in fact generous given the state of that law.

The next consideration is "the effectiveness of any proposed method of distributing relief to the Class." Defendant's records contained contact information for 386 potential Class members. As part of the Notice Program, Travelers sent direct notice via the United States Postal Service ("USPS") first-Class mail, postage prepaid, and by email where available to these Class Members. The Notice consisted of the long form notice to the Class Members, and two reminder notices. Thus far, 77 Class Members elected to make a claim to participate in the settlement. Class Counsel expects that number to increase in the almost two months that remain for submitting claims.

The next factor is "the terms of any proposed award of attorney's fees." In the Settlement Agreement, Travelers agreed to pay a maximum of $1,000,000 to Class Counsel for fees and costs. The salient point here is that the payment to Class Members is completely independent of any amount awarded to Class Counsel. The amount paid to Counsel does not diminish the amount Class Members receive by one iota. Any monies that are awarded that are less than the full request will benefit only Travelers. Additionally, Travelers has agreed to pay each class representative a

fee of $5,000 to compensate them for their substantial participation in this case. These amounts will also not diminish the amount Class Members will receive.

Finally, there are no side agreements between the parties and the settlement treats Class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(C)(iv), (D). The difference in percentage recoveries between the two classes solely reflects the difference in Pennsylvania law on enforceability of household exclusions vs. enforceability of regular use exclusions.

For these reasons, the factors set forth in Rule 23(e)(2) are clearly satisfied.

### C.    The *Girsh v. Jepson* Factors Are Also Satisfied

The Third Circuit has set forth nine factors which a court must also consider in conjunction with Rule 23(e), to determine whether a settlement is fair, reasonable, and adequate:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the Class to the settlement;

(3) stage of the proceedings and the amount of discovery completed;

(4) risks of establishing liability;

(5) risks of establishing damages;

(6) risk of maintaining the Class action through the trial;

(7) ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. Courts in the Third Circuit must apply the nine "*Girsh* factors" when evaluating Class settlement agreements. *See In re NFL Players*, 821 F.3d 410, 437 (3d Cir. 2016).

### 1.     The Complexity, Expense and Likely Duration of the Litigation

The first *Girsh* factor considers "the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). Should the Settlement not be approved, this case will be extensively litigated in this Court, the Third Circuit and/or Pennsylvania Supreme Court.  The end result could be, after substantial motion practice in this Court, an appeal and then potentially a remand in which this Court is called upon to retry this case, requiring significant investment of the parties' time and money, and this Court's resources. Avoiding further proceedings after three years of litigation benefits all parties and this Court. The motion practice, trial and appeal of this matter will be costly to both sides. While it is difficult to put an exact figure on these costs, they will clearly be very substantial to everyone.

### 2.     The Reaction of the Class and Objectors

"The Third Circuit has looked to the number of objectors from the Class as an indication of the reaction of the Class…Typically, the reaction of the Class is gauged by looking at the percentage of objections received in relation to the Class as a whole." *In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010). Here, Counsel are proud to report that they have received *no* objections. And only 6 of the 386 potential class members, less than 2%, have opted out.

### 3.     The Stage of the Proceedings and the Amount of Discovery Completed

This settlement was reached after extensive discovery, both formal and informal:

> The third *Girsh* factor—the stage of the proceedings and the amount of discovery completed—instructs a court to approve a settlement only if the parties have an "adequate appreciation" of the merits of the case. That requires an analysis of the nature and depth of discovery. [P]ost discovery settlements are more likely to reflect the true value of the claim and be fair.

*In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 578 (E.D. Pa. 2003). As a result, both parties have demonstrated an "adequate appreciation" of the merits of the case, and the third *Girsh* factor is satisfied. *Id.*

### 4 - 5.    The Risks of Establishing Liability and Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998).    Here, the case represents a benefit to Class Members that may well be the policy limits of their UM/UIM coverage. If this settlement were not in place, the parties would have headed to expensive and contentious motion practice and perhaps trial during the rapidly-changing environment of auto insurance law in Pennsylvania, and the award currently presented for Class Members provides a significant and present benefit.    Indeed, Travelers has consistently contended that it has substantial defenses as to both the household exclusion and regular use exclusion issues in this case.

### 6.    The Risk of Maintaining the Class Action Through Trial

The Class was preliminarily settled as a Settlement Class in the Court's September 23, 2024 order. *See* Dkt. No. 72. As a result, the Class action is at no risk at this juncture.

### 7.    The Ability of the Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant Corp.*, 264 F.3d 201, 240. While Class Counsel believes Travelers could likely withstand a judgment greater than the settlement, there is little doubt that how much greater would have been a matter of substantial dispute.

### 8 - 9.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

In evaluating the eighth and ninth *Girsh* factors, a court must examine whether "the settlement represents a good value for a weak case or a poor value for a strong case. The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re NFL Players*, 821 F.3d at 440 (internal citations and quotations omitted). "In recognition that the outcome of litigation is always uncertain and inevitably time-consuming and expensive, courts have long held that a cash settlement providing only a fraction of the potential recovery does not render a settlement inadequate or unfair." *In re New Jersey Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 82 (3d Cir. 2018). Similarly, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather, must represent a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*." *Lincoln Adventures LLC* , 2019 WL 4877563 *5 (D.N.J. Oct. 3, 2019)  (citing *In re Cendant* at 263).

Here, the relevant consideration is the amount each claimant will receive versus the unknowable amount, if any, that may come after a long period of motion practice and then from the vagaries of a jury verdict, after several months and potential years of additional motion practice and trial.  The settlement amount is also fair and reasonable given the substantial risks of appeal and the lengthy delays attendant thereto.  Weighed against the considerable risk and delay of future proceedings, the Settlement provides Class Members with  real, immediate, substantial compensation.

## V.    THE COURT SHOULD APPROVE CLASS COUNSEL'S ATTORNEY'S FEES AND EXPENSES

### A.    Courts Encourage Litigants to Reach Agreements on Fees in Class Actions

The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); *Halley v. Honeywell Int'l, Inc.,* 861 F.3d 481, 496 (3d Cir. 2017).  The Supreme Court has observed that, without the possibility of recovering an attorneys' fee, most Class actions would never be filed. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the Class action device"); *Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1216-17 (S.D. Fla. 2006) (parallel citations omitted).

In "claims-made" settlements, where, as here, the defendant bears responsibility for paying Class Counsel's reasonable fees and costs, courts encourage litigants to resolve fee issues by agreement. As the United States Supreme Court explains, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v Eckerhart*, 461 U.S. 424, 437 (1983); *see also Johnson v. Georgia Hwy. Exp., Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage Counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a Class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."). Accordingly, courts routinely approve agreed-upon reasonable attorneys' fees awards in claims made settlements, noting that the fee does not decrease the benefit

obtained for the Class. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 106 F.Supp.2d 721, 732 (D.N.J. 2000) (finding it significant that attorneys' fees would not diminish settlement fund). *See also McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) (granting Class Counsel full amount of fees agreed to by defendant where the attorneys' fees were separate from the Class settlement and did not diminish the Class settlement); (N.D.N.Y. 2009) (same); *DeHoyos v. Travelers Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (same).

This award of attorneys' fees and costs is completely separate and apart from the relief available to the Class and, thus, will not reduce the relief to the Class in any manner.[6] Furthermore, attorneys' fees were not negotiated or discussed until after agreement was reached between the parties on all other terms of the settlement. Shub Decl. at ¶ 7; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 335 (3d Cir. 1998).

The fee arrangement here was negotiated under the best of market conditions – an arm's-length negotiation – a process which the courts have encouraged. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties

---

[6] In evaluating fee requests in claims-made settlements, federal appellate courts have, following *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980), ruled that it is an abuse of discretion to base fee awards only on the Class members' claims made rather than on the total relief made available to the Class. *See Williams v. MGM-Pathe Comm's. Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court for basing fee award only on claimed portion of common fund); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007) (same). *See also Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019); *Gascho v. Global Fitness Holdings, LLC,* 822 F.3d 269, 285 (6th Cir. 2016) ("an option to file a claim creates a prospective value, even if the option is never exercised"). *See also Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 59* (E.D.N.Y. 2010) ("the value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus"). *Cf. Washington v. Phila. Cty. Court of Common Pleas,* 89 F.3d 1031, 1042 (3d Cir. 1996) ("We must not, however, reduce an attorney's fee award [in a fee-shifting case] "to maintain some ratio between the fees and the damages awarded'); *Carruthers v. Messner Enterprises Northgate,* 2013 WL 10872127, at *13, 34 Pa. D. & C. 5th 476 (in a fee-shifting UTPCPL claim, court awarded fees, over objection of defendant, that were ten times the amount that the jury awarded in UTPCPL damages).

themselves, should determine the quantum of attorneys' fees). The virtue of a fee negotiated by the parties at arm's-length is that it is, essentially, a market-set price. Travelers has an interest in minimizing the fee; Class Counsel have an interest in maximizing the fee to compensate themselves (as the case law encourages) for their risk, innovation, and creativity; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the Court may award if the attorneys' fees award were litigated.

Because the fee arrangement in this case was negotiated by experienced Counsel at arm's-length, judicial deference to the parties' fee agreement is warranted. *See In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (stating that the court should be reluctant to disturb agreed-upon attorneys' fees where Class Counsel negotiated the fee with sophisticated defense Counsel who were familiar with the case, risks, amount and value of Class Counsel's time, and nature of the result obtained for Class), *appeal dismissed for Class member's lack of standing*, 33 F.3d 29 (9th Cir. 1994), *superseding* 19 F.3d 470 (9th Cir. 1994); *In re Apple Computer, Inc. Deriv. Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement."); *Cohn v. Nelso*n, 375 F.Supp.2d. 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference."); *In re AXA Fin., Inc*., 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ("Where, as here, the fee is negotiated after the parties have reached an agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the Class, this court will also give weight to the agreement reached by the parties in relation to fees."); *Ingram v. Coca-Cola Co*., 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"). *See also McBean*, 233 F.R.D. at 392 (when Class Counsels' fees are not being taken

out of a "common fund," a court need not review an application for attorneys' fees with the same heightened level of scrutiny because there is no conflict of interest between attorneys and Class members). In short, Class Counsel's requested award of $1,000,000, inclusive of fees and costs, in connection with conferring a substantial benefit on the Class is presumptively reasonable because the award will not diminish the settlement fund.

### B.    The Lodestar Method Should be Used to Analyze Counsel's Fee Request

The Court is s required to scrutinize the reasonableness of the fee request even where the parties have reached an agreement on a fair and reasonable request. *See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 299 (3d Cir. 2005). In "claims made" settlements like this one, where there is no common fund in which to value the settlement, courts typically employ the lodestar method for determining the reasonableness of the requested fee. *See Dungee v. Davison Design & Development Inc.*, 674 Fed. Appx. 153, 156 (3rd Cir. 2017) (lodestar method is also the appropriate method for determining a reasonable fee in "claims made" settlements where there is no established "common fund" from which a simple percentage could be taken). Under this approach, a court calculates attorneys' fees by multiplying "reasonable hours" by "a reasonable [hourly] rate." *Samuel-Bassett v. Kia Motors Am., Inc.,* 613 Pa. 371, 34 A.3d 1, 11 n.2 (2011) (*quoting City of Burlington v. Dague*, 505 U.S. 557, 559 (1992)). Courts have observed that, where appropriate, "the reasonableness of the lodestar can be tested by the court's familiarity with the case." *Melito v. American Eagle Outfitters, Inc.* 2017 WL 3995619, at *19 (S.D.N.Y. Sept. 11, 2017) (*quoting Sewell v. Bovis Lend Lease, Inc.,* 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012)) (internal quotations omitted).

As Counsel demonstrates below, their request is reasonable in terms of their hourly rates and hours expended.

In addition to analyzing the lodestar (hourly rates and time expended), courts in the Third Circuit also apply the following "*Gunter* factors" to assess if the fee request amount is reasonable: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by Counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' Counsel; and (7) the awards in similar cases." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). These factors "need not be applied in a formulaic way ... and in certain cases, one factor may outweigh the rest." Id. In other cases, one or more factors may not be relevant at all.

### 1.    Class Counsel's Hourly Rates Are Reasonable

The first prong of the lodestar analysis focuses on Counsel's hourly rates. Generally, a reasonable hourly rate is calculated according to the "prevailing market rates in the relevant community." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001), (*citing Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The starting point "is the attorney's usual billing rate, but this is not dispositive." *Potence v. Hazleton Area Sch. Dist.,* 357 F.3d 366, 374 (3d Cir. 2004), (*citing Maldonado*, 256 F.3d at 184–85). In addition, a Court "'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id*. (*citing Dellarciprete*, 892 F.2d at 1183). The party seeking attorneys' fees "bears the burden of establishing by way of satisfactory evidence...that the requested hourly rates meet this standard." *Id*. (*citation omitted)*.

Class Counsel have met their burden. Each of the Declarants here have presented evidence of the hourly rates for them and members of their respective firms. In fact, Judge Beetlestone

approved these same Firms' hourly rates *in Stockdale v. Allstate Fire & Casualty Ins. Co.*, 2:19-cv-845 (E.D.Pa. 2022), a substantially similar type of case culminating in settlement. Moreover, all of Counsels' rates are squarely within the range of rates routinely approved by other courts in this District for this type of complex litigation. *See, e.g., Saint v. BMW of N. Am., LLC*, No.12-6105 CCC, 2015 WL 2448846, at *15 (D.N.J. May 21, 2015), (*citing In re Merck & Co. Vytorin ERISA Litig.*, No. 08–CV–285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010)).[7]

### 2.    Counsel's Hours Expended Were Necessary and Reasonable

The second prong of the lodestar analysis, and an important *Gunter* factor, focuses on the number of hours reasonably expended. That factor is also satisfied.   Although Class Counsel has already has almost $1,000,000 in lodestar, Class Counsel has a significant amount of work to do to bring this case to a final conclusion as Travelers' evaluation and determination of claims has not yet commenced. Class Counsel will   expending significant time evaluating Travelers' determination for each submitted claim and fully expects to contest determinations that it deems to be erroneous.

While Class Counsel's hours and lodestar will increase substantially because of its work in the forthcoming Class process, Class Counsel has, to date, collectively spent 1273.15 hours litigating this matter for an aggregate lodestar as of now of approximately $ 977,383.75. These hours were documented contemporaneously, and detailed, itemized statements are available on request.[8] These hours, incurred over the course of almost five years of litigation, were necessary

---

[7] As this Court recently noted in *Earley v. JMK Assocs.*, No. CV 18-760, 2020 WL 1875535, at *1 (E.D. Pa. Apr. 15, 2020), "[i]n this Circuit, it has long been true that '[w]hen attorney's fees are awarded, the current market rate must be used.'" (*quoting Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001)). The current market rate "is the rate at the time of the fee petition, not the rate at the time the services were performed." *Id.*

[8] Each Firm has furnished the Court with a chart, attached to their respective declarations, that provide summaries of the hours expended by attorney and paralegal and by task category. This is

in light of the novelty and scope of this case and in light of the vigorous motion practice of the Parties and the extended settlement administration process that Class Counsel was heavily involved in.

Class Counsel's work include an extensive pre-suit investigation and application of a novel Pennsylvania Supreme Court decision to secure benefits for the Commonwealth's motorists. Counsel has incurred additional, uncompensated time briefing Plaintiff's motion for final approval of the settlement, as well as time beyond that finalizing administration of the settlement. Because the hours spent are reasonable and proportional to the work of the case, this factor supports the requested fees. *See Maldonado,* 256 F.3d at 184 (3d Cir. 2001) (calculation of hours reasonably expended requires a court to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'").

### 3.      The Size of the Fund Created and the Number of Persons Benefitted

Tuning to the *Gunter* factors, the first factor, the size of the fund and the number of persons benefitted warrants the requested fee. The potential for a policy limit represents a significant benefit; in many cases, these claimants' policy limits are above $10,000.00 and can approach upwards of $100,000.00. Each of these claimants were involved in a car accident in which there was at least one (in many cases, two) levels of prior insurance coverage available to them following their accident before their household UM/UIM coverage could be used. Particularly, for claimants with longstanding injuries from their car accident—each with their own trauma from the experience—an amount as significant as being provided here, even years down the line, represents

---

standard protocol in this District, and elsewhere.  *See, e.g., Stevens v. SEI Investments, Co*., No. 18-4025, 2020 WL 996418, *13 (E.D. Pa., Feb. 28, 2020); *In re Cigna-American Specialty Health Admin Fee Litig.,* No. 03967, 2019 WL 4082946, *15 (E.D. Pa., August 29, 2019).

long-overdue *serious* compensation. And such compensation is not capped by an arbitrary number; indeed, the settlement contemplates a seven-digital amalgamation of all potential Class members' policy limits.

### 4. The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel

At the time of the objection deadline, no potential Class member objected to the Settlement. Importantly, each potential Class Member was on notice of this Settlement. This absence of objections despite prolonged notice (original notice and 2 reminder notices) warrants consideration of Counsel's requested fee amount.

### 5. The Complexity of the Litigation and the Skill and Efficiency of the Attorneys involved

As this was one of the first class action cases following *Gallagher*, it was both novel and complex. Counsel faced numerous issues following the *Gallagher* decision for which there was little precedent, and had to create many "out of the box" arguments. In addition, the settlement administration involves Class Counsel's direct involvement in ways that few other Class settlements typically do.

### 6. The Risk of Non-Payment

This litigation presented substantial risks that weigh in favor of the requested fees. When assessing risk of nonpayment, courts consider the risk of loss, including the risk of nonrecovery by contingent-fee counsel. *See, e.g.*, *Kapolka v. Anchor Drilling Fluids USA*, LLC, No. 18-1007, 2019 WL 5394751 at *9 (W.D. Pa. Oct. 22, 2019); *Acevedo v. Brightview Landscapes, LLC,*, 2017 WL 4354809 at *18.

Class Counsel litigated this case on a contingent fee basis for almost five years, devoting substantial time without pay and fronting all costs, while assuming the risk they may not ultimately recover anything. While Class Counsel were confident in their case, Defendants raised numerous

defenses against the novel *Gallagher* decision on which they might have obtained favorable rulings from this Court or on appeal. And the fact the case involved serious motion practice and the possibility of an appeal was raised shows it was not easily settled and success was far from a foregone conclusion. Because Class Counsel ran a very real risk of nonpayment, this factor weighs in favor of the requested fees.

### C.    The Named Plaintiff Enhancement Award to Ms. Good and Mr. Frazer Should Be Approved

The Settlement Agreement provides for a service award (contemplated as the "Named Plaintiff Enhancement Award") of $5,000 to the two Class Representatives, Florence Good and Jesse Frazer. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the Class action litigation." *In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468 (E.D. Pa. 2010) (*citing Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 145 (E.D. Pa. 2000). Courts evaluate several factors in determining the appropriateness of service award, including: "the financial, reputational, and personal risks to the plaintiff; the degree to which the plaintiff was involved in discovery and other litigation responsibilities; the length of the litigation; and the degree to which the named plaintiff benefitted as a Class member." *Fein v. Ditech Financial, LLC*, No. 5:16-cv-00660, 2017 WL 4284116, *11 (E.D. Pa. Sept. 27, 2017).

The two Class Representatives have devoted substantial time over the past five years to the litigation of this case. They consulted with Counsel in settlement discussions and have been a model of how Class representatives should represent a Class in public interest litigation. They should be recognized and compensated as such.

The proposed service awards represent a small fraction of the total potential settlement amount, and courts have regularly held that similar service awards are reasonable. *See, e.g.,*

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members,* No. 08-00235 (CCC), 2019 WL 4877563, at *1 (D.N.J. Oct. 3, 2019*)* at *9 (holding that $15,000 service awards each to two named plaintiffs was reasonable); *Bonett v. Educ. Debt Servs., Inc*., No. 01-6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) (holding that $4,000 award to Class representative was reasonable where total settlement was $22,000); *Marchbanks Truck Serv. v. Comdata Network, Inc.,* No. 07-1078, 2014 WL 12738907, at *3 (E.D. Pa. July 14, 2014) (granting service awards totaling $315,000 to named plaintiffs). Since the proposed settlement falls within a range that has been found reasonable by this Court in other matters, the Named Plaintiffs' service awards should be approved.

### D.    Counsel's Costs Should be Reimbursed

Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). The appropriate analysis to apply in deciding which expenses are compensable in a case of this type is whether the particular costs are the type typically billed by attorneys to paying clients in the marketplace.

The categories of expenses for which Class Counsel seek reimbursement here are the type of expenses routinely charged to hourly clients, (1) travel for court appearances and depositions, (2) filing fees, and (3) deposition costs and other related expenses. Accordingly, Class Counsel's aggregate expenses of $8,208.51 should be reimbursed as part of the $1,000,000 fee award and reimbursement of costs that is being requested.

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for final Approval of the Settlement and Plaintiffs' Motion for an Award of Attorney's Fees, and enter the Order submitted herewith, which was agreed upon by the parties and previously submitted to the Court as part of the preliminary approval package.

Dated: July 21, 2025                    Respectfully Submitted,

                                        */s/ Jonathan Shub*
                                        Jonathan Shub (Pa. I.D. # 53935)
                                        **SHUB JOHNS & HOLBROOK LLP**
                                        Four Tower Bridge
                                        200 Barr Harbor Drive, Suite 400
                                        Conshohocken, PA 194238
                                        (610) 477-8380
                                        jshub@shublawyers.com

                                        Scott B. Cooper
                                        **SCHMIDT KRAMER, P.C.**
                                        209 State Street
                                        Harrisburg, PA 17101
                                        (717) 232-6300
                                        scooper@schmidtkramer.com

                                        James C. Haggerty
                                        **HAGGERTY, GOLDBERG,**
                                        **SCHLEIFER & KUPERSMITH, P.C.**
                                        1801Market Street, 11th Floor
                                        Philadelphia, PA 19103
                                        (267) 350-6600
                                        jhaggerty@hgsklawyers.com

                                        *Counsel for Plaintiffs*